O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DEMITRI CORBIN,

             Plaintiff,

             v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

             Defendant.

    Case No. CV 17-00523-KES

    MEMORANDUM OPINION AND
    ORDER

       Plaintiff Demitri Corbin ("Plaintiff") appeals the final decision of the Social Security Commissioner denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  For the reasons discussed below, the Commissioner's decision is AFFIRMED.

## I.
## BACKGROUND

       Plaintiff graduated from college with bachelor's degree in acting and directing.  Administrative Record ("AR") 59.  For more than twenty years, he worked in the catering industry as a waiter, bartender, and banquet captain while

also pursuing his interest in the performing arts. AR 60. In May 11, 2012, he injured his back in an industrial accident while helping coworkers push a heavy pallet of bar products up a ramp.[1] AR 62, 1026. Pushing pallets was "out of [his] job description," but he was trying to help a short-staffed loading crew. Id. A November 2012 MRI revealed lumbar spine disc injuries, and he underwent reparative surgery in August 2013. AR 65, 726. As early as May 2013, he sought authorization through his employer's workers' compensation insurer to obtain a cervical MRI, but he did not obtain one until July 2014.[2] AR 66, 761. Based on those MRI results, in January 2016, he had multi-level cervical spine fusion surgery. AR 67.

Plaintiff filed his relevant benefits application in May and June of 2015, alleging a disability onset date of May 12, 2012. AR 252-57. An Administrative Law Judge ("ALJ") conducted a hearing on June 4, 2016, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 55-99. The ALJ issued an unfavorable decision on August 16, 2016. AR 33-54.

The ALJ found that Plaintiff does not suffer from any severe mental impairment. AR 39. The ALJ, however, found that Plaintiff suffers from the severe physical impairments of lumbar and cervical degenerative disc disease (status post two surgeries) and left middle trigger finger. AR 39. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity

---

[1] The ALJ indicated that Plaintiff suffered a second, work-related accident injuring his back on May 11, 2013. AR 44, citing AR 508 (medical progress note indicating date of accident was "5-11-13"). The better interpretation of the record is that the 2013 accident date at AR 508 was a typographical error and only one accident occurred in 2012.

[2] The insurer's initial position was that Plaintiff's lower back was the only body part injured by Plaintiff's work accident. AR 1017.

("RFC") to perform light exertional work[3] with additional limitations on certain postural and manipulative activities. AR 41. Due to his cervical spinal fusion surgery, the ALJ precluded Plaintiff from work that requires "turning his head from side to side." AR 42.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform his past relevant work as a waiter, bartender, theater arts teacher, teacher's aide, or banquet captain (as generally performed, not as actually performed). AR 48. Based on these findings, the ALJ concluded that Plaintiff was not disabled. Id.

## II.

## ISSUES PRESENTED

Issue One: Whether the ALJ satisfied his obligations under Social Security Ruling ("SSR") 00-4p which requires ALJs to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs … and information in the Dictionary of Occupational Titles (DOT) … and [e]xplain in the determination or decision how any conflict that has been identified was resolved." Dkt. 17, Joint Stipulation ("JS") at 3.

The DOT is silent concerning the head-turning requirements of listed jobs. Plaintiff argues that whenever a VE testifies about a job requirement not in the DOT, the ALJ must obtain an explanation of the VE's opinion. Plaintiff further argues that the explanation the VE gave in this case was not legally sufficient. JS at 9.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Issue Two:  Whether the ALJ erred in discounting Plaintiff's testimony concerning the limiting effects of his impairments.  JS at 3.

Issue Three:  Whether the ALJ's assessment of the medical evidence is supported by substantial evidence.  Id.

For ease of discussion, the Court divided Issue Three into the following three sub-issues:

Issue Three A:  Whether the case should be remanded to permit the ALJ to consider Plaintiff's new evidence.

Issue Three B:  Whether the ALJ erred in finding that Plaintiff does not suffer from a severe mental impairment.

Issue Three C: Whether the ALJ's RFC determination is supported by substantial evidence.

### III.

### DISCUSSION.

**A.**  **Issue One: Alleged Conflict between the DOT and the VE's Testimony.**

    **1.**  **Relevant Administrative Proceedings.**

At the hearing, the ALJ asked the VE if a hypothetical person with all the restrictions in Plaintiff's RFC – except the restriction against turning his head from side to side – could do Plaintiff's past relevant jobs.  AR 94.  The VE testified that the hypothetical person could work as a waiter, bartender, theater arts teacher, or teacher's aide.  Id.  The VE also explained that the hypothetical person could work as a banquet captain as that job is described in the DOT (i.e., light work) but not as Plaintiff performed it (i.e., medium work).  AR 93-94.

The ALJ next asked the VE to consider the same hypothetical person, but add a restriction that he could not turn his head side to side.  AR 97.  The VE testified that the additional restriction did not change her opinions, saying, "I don't know why you could not turn your body."  Id.  The VE subsequently affirmed that her testimony was consistent with the DOT and "supplemented by continuing

education, other vocational resources, and experience."  AR 98.

The ALJ relied on the VE's testimony to find that Plaintiff could perform his past relevant work.  AR 48.

## 2.    Analysis.

An ALJ may not rely on a VE's testimony regarding the requirements of a job without first inquiring whether the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p).  If there is a conflict between the VE's testimony and the DOT, an ALJ must determine whether there is a reasonable explanation for the deviation.  Id. Reasonable explanations for deviating from the DOT include that the DOT "does not provide information about all occupations, information about a particular job not listed in the [DOT] may be available elsewhere, and the general descriptions in the [DOT] may not apply to specific situations."  Id. at 1153, n.17 (citing SSR 00-4p).  "The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony …."  Id. at 1153.

The Ninth Circuit has not addressed in a published decision the question of whether an apparent conflict with the DOT arises when the DOT is silent as to a particular mental or physical requirement.  Unpublished decisions go each way. Compare Dewey v. Colvin, 650 Fed. Appx. 512, 514 (9th Cir. 2016) (finding no conflict between sit/stand option and DOT because "the DOT is silent on whether the jobs in question allow for a sit/stand option"), with Buckner-Larkin v. Astrue, 450 Fed. Appx. 626, 628-29 (9th Cir. 2011) (finding "conflict" between at-will sit/stand option and DOT was adequately addressed by VE based on VE's own research and experience).  This Court declines to find that a conflict always exists when the DOT is silent and instead adopts a case-by-case approach.  See Wester v. Colvin, 2015 WL 4608139, *5 (C.D. Cal. July 31, 2015) ("[W]hen a VE relies on a functional limitation about which the DOT is silent or unclear, a conflict may exist depending upon the circumstances of the case.").  For example, in Gutierrez v.

Colvin, 844 F.3d 804, 807 (9th Cir. 2016), the Ninth Circuit found no "obvious or apparent" conflict that triggered the ALJ's duty to inquire further where the VE opined that a claimant precluded from overhead reaching with her right arm could work as a cashier, where the DOT description required frequent reaching but did not specify in what direction. The Ninth Circuit reasoned that it was "unlikely and unforeseeable" that a cashier would need to reach overhead, and even more rare for one to need to reach overhead with both arms. Id. at 808-09 and 809 n.2. In contrast, the Ninth Circuit found a conflict in Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017), because the court could not "say that, based on common experience, it is likely and foreseeable that an office helper, mail clerk, or parking lot cashier with limitations on his ability to 'handle, finger and feel with the left hand' could perform his duties."

Here, the VE opined that Plaintiff could perform teaching jobs (i.e., teacher's aide and theater arts teacher) and food service jobs (i.e., bartender, waiter, and banquet captain) despite his inability to turn his head side to side. AR 97. As Plaintiff points out, the likely and foreseeable way these jobs are performed includes the need to look at many people, and thus to look in different directions. JS at 5-6. This potential inconsistency triggered the ALJ's duty to inquire under SSR 00-4p.

The ALJ here had no need to inquire because the VE spontaneously explained her testimony. The VE explained that someone performing those jobs could meet the need to look in different directions by turning his body rather than turning his neck. AR 97.

Plaintiff argues that this is not a "reasonable explanation" as required by SSR 00-4p. Plaintiff claims that the VE's testimony that a worker who must look in different directions can do so by turning his body is nothing more than "a personalized hunch." JS at 9.

"A VE's recognized expertise provides the necessary foundation for his or

her testimony." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Claimants, especially when represented by counsel, cannot argue that a VE's testimony lacks foundation when they fail to question the VE at the hearing about the challenged testimony. Lang v. Comm'r of SSA, 2014 WL 1383247, at *5 (E.D. Cal. Apr. 8, 2014) ("Plaintiff chose not to inquire as to the VE's methodology at the hearing and now attempts to prove that the numbers were made up due to the absence of evidence that the numbers were not made up – a void in the record that Plaintiff chose not to fill.")

A VE's testimony is substantial evidence if "a reasonable mind might accept [it] as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reasonable mind might accept that a person who cannot turn his head side to side could nevertheless perform Plaintiff's past relevant work by turning his body when he needs to look in different directions. Indeed, Plaintiff testified that he can still drive, an activity that constantly requires looking in different directions, despite being unable to turn his head side to side. AR 88. The ALJ did not err in relying on the VE's adequately explained testimony.

**B.** **Issue Two: Plaintiff's Pain Testimony.**

**1.** **Rules for Evaluating Claimants' Subjective Testimony.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

If the ALJ finds testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958

(9th Cir. 2002).  In doing so, the ALJ may consider testimony from physicians "concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Id. at 959 (citation omitted).  If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (citation omitted).  If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014).  The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8.  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

There are two ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination:  if the claimant's activity contradicts his

testimony or if the claimant's activity meets the threshold for transferable work skills." Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014). The first way is satisfied if a claimant gives contradictory testimony about his activities or if there are "contradictions between [the claimant's] reported activities and his asserted limitations." Morgan v. Comm'r of the SSA, 169 F.3d 595, 600 (9th Cir. 1999). The second way is satisfied "[i]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting …." Id.

## 2. The ALJ's Evaluation of Plaintiff's Testimony.

Plaintiff completed an Adult Function Report. AR 305-13. The ALJ gave this report's description of Plaintiff's activities "significant probative weight" because it was consistent with other evidence concerning Plaintiff's activities (i.e., a third-party report completed by his friend, Patricia Lawson, and Plaintiff's medical progress notes). AR 47.

At the hearing, Plaintiff testified that he could not lift more than ten pounds because his doctor had restricted him from doing so. AR 71. He also testified that if he uses his hands to write or type for more than fifteen or twenty minutes, then he experiences "numbness and tingling" and must stop. AR 71-72. He estimated that he could continuously stand for one hour, sit for two hours, and walk for one and a half hours. AR 74-76. After a one-hour therapy walk in the morning, he can do additional walking later to run errands. AR 77. Even if he mixes up standing and walking, he cannot sustain those activities for five or six hours per day. AR 75. He lies down between thirty and sixty minutes each day. AR 82.

Regarding his mental impairments, Plaintiff reported that his anxiety prevents him from going to crowded places alone. AR 308. On a checklist with nineteen functional abilities potentially affected by his condition, Plaintiff checked all nineteen, including hearing, seeing, memory, concentration, understanding, following instructions, and getting along with others. AR 310.

The ALJ found that Plaintiff's allegations of physical and mental disability were "undermined by the reports in the record regarding [his] extensive activities." AR 47. The ALJ devoted several paragraphs to listing Plaintiff's activities: taking care of his personal hygiene, using the computer, performing volunteer work for the arts community, teaching voice, writing for a quarterly magazine on arts and culture, visiting friends, cooking basic meals, washing dishes, doing laundry, performing light cleaning, taking walks, shopping, going to restaurants, playing board games, and using public transportation. Id.

### 3. Analysis.

Plaintiff contends that the ALJ's credibility analysis was flawed because (1) the ALJ did not point to specific portions of Plaintiff's testimony that he disbelieved, (2) the ALJ used medical improvement to discredit Plaintiff without considering whether Plaintiff was eligible for a closed period of benefits from the time prior to his surgical interventions, and (3) Plaintiff's activities do not show "a capability to perform work-related activities." JS at 10.

Concerning the first point, the ALJ did point to specific portions of Plaintiff's testimony that the disbelieved. The ALJ disbelieved Plaintiff's assertion that he could not lift more than 10 pounds or walk/stand for at least 6 hours in an 8-hour work day, because the ALJ determined that Plaintiff could perform light work. AR 41. Light work requires lifting up to twenty pounds and "standing or walking, off and on, for a total of approximately six hours of an eight-hour workday." 1983 SSR LEXIS 30, *14. The ALJ also disbelieved Plaintiff's assertion that his pain and anxiety have impaired his daily activities, social functioning, and concentration, because the ALJ found that he has "no limitations" in these areas. AR 39-40.

Concerning the second point, Plaintiff fails to develop this argument; it is mentioned in one sentence with no citations to any legal authority or evidence in the record. JS at 10. The ALJ did find that Plaintiff had "some temporary periods

of disability around the time of his lumbar and cervical surgeries, but his disability did not last 12 or more continuous months. He recovered well postoperatively and was at least able to return to light work." AR 44. The ALJ based this finding on evidence of Plaintiff's "active lifestyle following his surgery" and medical records indicating "his pain was significantly improved postoperatively." Id. Plaintiff has failed to show the ALJ erred.

Concerning the third point, the ALJ found that while Plaintiff's writing for a magazine and volunteering were not substantial gainful employment, they were "reflective of an ability to work." AR 39. As the Commissioner points out, many of Plaintiff's reported activities are work-related activities, such as teaching, studying, volunteering, using a computer, and writing articles. JS at 14. Other of Plaintiff's reported activities, such as cooking, cleaning, running errands, and visiting with friends, involve some of the same functional abilities that one would use to perform Plaintiff's past jobs.

There is substantial evidence in the record to support the ALJ's conclusion that these activities constituted a "substantial part" of Plaintiff's day. In his Adult Function Report, Plaintiff explained that his daily activities include his one-hour therapy walk, preparing "good, fresh food" for breakfast, lunch, and dinner, and spending about a half hour to wash dishes. AR 306-07. He spends "a lot of time studying" workers' compensation law and dealing with insurance and benefits issues, including firing his workers' compensation attorney. AR 306, 310, 1023. He shops as needed and visits with friends 3-4 times per week, which includes going to their homes or restaurants. AR 309. Plaintiff told Dr. Brian Grossman that he "tries to stay busy and occupied during the day." AR 1430. To that end, in 2016 he volunteered for a theater company teaching actors, assisting at rehearsals that "lasted four hours a day for six weeks." Id. While some of Plaintiff's activities are usually done seated (e.g., using a computer and writing articles), many others would require walking or standing (e.g., therapy walking, cooking, washing dishes,

running errands, and teaching acting).

Plaintiff's claimed mental impairments are also inconsistent with his activities. Assisting at four-hour rehearsals demonstrates the ability to get along with others and stay on task. Taking a one-hour therapy walk every morning demonstrates the ability to maintain a schedule. Using a computer and writing articles are inconsistent with severe cognitive impairment.

Given the above-summarized evidence, the ALJ did not err in concluding that Plaintiff's activities are inconsistent with his reported limitations.

**C.  <u>Issue Three A: New Evidence.</u>**

**1.  Factual Background.**

After the ALJ's August 16, 2016 decision, Plaintiff submitted Barrington Psychiatric Center psychologist Dr. Godwin's August 27, 2016 re-evaluation to the Appeals Council, which made it part of the record. AR 5 (making re-evaluation Ex. 24F [AR 1426-36]). When the Appeals Council accepts new evidence, the district court must consider it when evaluating whether the ALJ's findings are supported by substantial evidence. <u>Brewes v. Comm'r of SSA</u>, 682 F.3d 1157, 1160 (9th Cir. 2012).

Plaintiff submitted three other records that the Appeals Council declined to accept as new evidence: (1) October 2016 authorization from the Southern California Orthopedic Institute "for a consultation with hand specialist Dr. David Auerbach" (<u>see</u> Dkt. 17-1 at 1-2); (2) October 2016 authorization for four psychotherapy sessions (<u>id.</u> at 3-4); and (3) supporting report from psychiatrist Dr. Soliman considering whether "individual psychotherapy once a week for 10 weeks" is "medically necessary" and authorizing only four sessions (<u>id.</u> at 5-8). JS at 15.

Regarding the hand-related orthopedic authorization, the Appeals Council explained that it was not accepted because it relates to "a later time." AR 2. The Appeals Council did not explain its rejection of the two other documents. Plaintiff

argues that the case should be remanded so that the ALJ can consider these three documents as new evidence. JS at 16, 20.

### 2. Rules Governing Remand to Consider New Evidence.

Remand to permit an ALJ to consider new evidence is appropriate if (1) the new evidence is "material" and (2) there is "good cause" for the failure to incorporate such evidence in the record in a prior proceeding. Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984) (citing 42 U.S.C. § 405(g)). "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." Mayes v. Massanari, 276 F.3d 453, 463 (9th Cir. 2001); see also Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied.").

To be material, the new evidence must bear "directly and substantially on the matter in dispute." Mayes, 276 F.3d at 462 (holding no remand required where claimant failed to demonstrate that "the [back] condition diagnosed in November 1997 [and discussed in the new evidence] even existed when the ALJ hearing was held in May 1997"). This means it must be probative of the claimant's condition at or before the time of the disability hearing. Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511 (9th Cir. 1988) (citing 20 C.F.R. § 404.970(b)) (holding evidence of "mental deterioration after the hearing … would be material to a new application, but not probative of his condition at the hearing"). Finally, materiality also requires claimants to "demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." Mayes, 276 F.3d at 463.

Good cause appears to exist because all the disputed records were written after the ALJ's unfavorable opinion, and Plaintiff could not have obtained them earlier through the exercise of reasonable diligence. The parties, however, dispute

materiality.

### 3.     <u>Materiality Analysis</u>: Hand Specialist Consultation Authorization.

The form document contains only one original sentence: "This is authorization for a consultation with hand specialist Dr. David Auerbach for the left long finger." Dkt. 17-1 at 2. Plaintiff argues that this document is material, because the ALJ should have assessed more limitations "with respect to his ability to reach, handle, [and] finger …." JS at 17. The ALJ found that Plaintiff was limited to "frequent overhead reaching, handling, fingering, feeling, pushing, and pulling …." AR 41. In the context of social security disability benefits, "frequent" means up to two thirds of the time. SSR 83-10, 1983 WL 31251, at *6.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). This insurance authorization does not contain any medical opinion evidence. Moreover, this document is not necessary to prove that Plaintiff suffers from a severe hand impairment, because the ALJ already found that Plaintiff's trigger finger is a severe impairment. AR 39. In the Joint Stipulation, Plaintiff does not discuss the content of this document or any medical opinions by Dr. Auerbach. Plaintiff failed to carry his burden of showing that the document is material.

### 4.     <u>Materiality Analysis</u>: Psychotherapy Authorization and Dr. Soliman's Report.

The authorization letter does nothing more than communicate that insurer Coventry Worker's Compensation Services authorized four psychotherapy sessions for Plaintiff but denied his request for an additional six sessions. Dkt. 17-1 at 3-4. The letter does not contain any medical opinion evidence and is not material.

Dr. Soliman's report summarized Dr. Godwin's 2015 initial evaluation and 2016 re-evaluation, both of which are already evidence of record. Dkt. 17-1 at 5. Dr. Soliman noted that "CA MTUS [chronic pain treatment] guidelines recommend the use of the requested psychotherapy for 4 initial sessions to facilitate treatment and speed recovery." Id. at 7. Based on those guidelines, he approved "individual psychotherapy 2 times a week for 2 weeks." Id. at 8.

Plaintiff argues that the Appeals Council should have accepted this report as evidence, because "Dr. Soliman reviewed records from Dr. Godwin covering the time frame from 8/9/16 through 8/27/16, which correlates with the time that the ALJ issued the unfavorable hearing decision." JS at 16.

Plaintiff has not provided any notes from whatever psychotherapy sessions he may have attended. Dr. Soliman's report does not contain any new medical opinion evidence. Dr. Soliman's decision to authorize four psychotherapy sessions was based on the cited worker's compensation insurance guidelines for chronic pain management and not on his exercise of independent medical judgment. Again, Plaintiff has not carried his burden of showing this report is material.

For these reasons, no remand is required to permit the ALJ to consider Plaintiff's proposed three new exhibits.

## D. Issue Three B: The ALJ's Determination that Plaintiff's Mental Impairments are Non-Severe.

### 1. Rules Governing Step Two Severity Determinations.

Once a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments are "severe." Edlund v. Massanari, 253 F.3d 1152, 1160-61 (9th Cir. 2001). An impairment is "severe" if it significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). Basic work activities are the abilities and aptitudes necessary to do most jobs. 20 C.F.R. § 416.921(b). Examples of physical work activities

include walking, standing, sitting, reaching and carrying.  Id.  A severe impairment is one that has "more than a minimal effect on the individual's ability to do work."  Social Security Ruling ("SSR") 96-2p.  Conversely, an impairment is "non-severe" if it does not significantly limit a claimant's ability to perform basic work activities.  20 C.F.R. § 416.921(a).  If a claimant does not have a medically determinable impairment that is "severe" over a period of at least 12 consecutive months, then the claimant is not disabled.  20 C.F.R. 416.909.

The ALJ must consider the combined effect of all the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe.  42 U.S.C. § 423(d)(2)(B); SSR 86-8, 85-28.  The ALJ must also consider the claimant's credible subjective symptoms, such as pain or fatigue, in determining severity.  SSR 88-13; 20 C.F.R. § 416.920(c).  "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

### 2. The ALJ's Step Two Findings.

The ALJ found that Plaintiff's depressive disorder "does not cause more than minimal limitation on [his] ability to perform basic mental work activities."  AR 39.  To support this finding, the ALJ noted that Plaintiff had never received treatment from a mental health care specialist (AR 43) and cited an October 2015 psychological evaluation conducted by Dr. Godwin.  AR 39, citing AR 1066-78.  This was the only psychological evaluation of Plaintiff in the record prior to the ALJ's decision.

Dr. Godwin noted that Plaintiff was experiencing anxiety and depression as he awaited authorization for neck surgery.  AR 1067.  Dr. Godwin described

Plaintiff's affect as "neither depressed nor anxious." Id. Plaintiff told Dr. Godwin that he takes Xanax 0.25 mg "a couple of times a week," which was prescribed by his surgeon, Dr. Grossman.[4] AR 1068. Dr. Godwin diagnosed Plaintiff as suffering from an adjustment disorder with anxiety. AR 1074. Dr. Godwin opined that his anxiety was related to uncertainty about the approval of his neck surgery, and that Plaintiff contacted him a few days after the evaluation to report that he had received authorization for the surgery and that "this had put a lot of his anxiety to rest." Id. Dr. Godwin noted that Plaintiff's psychological symptoms had not rendered him disabled because "he continues to instruct children in the arts and also does some occasional writing for magazine." AR 1075. Dr. Godwin did not apportion any percentage of Plaintiff's disability to his psychological symptoms. AR 1076. Dr. Godwin later confirmed that when he evaluated Plaintiff in 2015, Plaintiff was not suffering "from any diagnosable mental condition." AR 1427.

While Dr. Godwin is the only mental health care specialist who evaluated Plaintiff, the record does contain other treating records discussing Plaintiff's mental health, summarized in chronological order below.

Plaintiff's physical therapist consistently noted "Mental Status/Cognitive Function appears impaired? No." AR 516, 519, 528, 546, 557.

In March, April, and May of 2014, treating doctor Hideto Saito found Plaintiff psychiatrically "normal." AR 647, 650, 656.

---

[4] In December 2014, Plaintiff's treating surgeon, Dr. Grossman, referred Plaintiff for a psychological consult because "the patient appears to have developed depression and anxiety due to his ongoing pain and stress related to his injury." AR 909. In February 2015, Dr. Grossman prescribed Plaintiff Xanax "for anxiety and severe spasms." AR 931. In June 2016, Dr. Grossman's notes say, "Xanax prescribed but not authorized" by insurance. AR 1284. In July 2016, Dr. Grossman noted "authorization was provided for Xanax refill." AR 1278. In August 2016, however, Plaintiff told Dr. Godwin that he could not get a Xanax refill when it ran out. AR 1429.

In June 2014, Plaintiff visited the emergency room complaining of leg pain. AR 600-01. The E.R. noted a "generalized anxiety disorder" and instructed Plaintiff to follow up with his primary care physician. AR 604. Plaintiff drove himself home. AR 603. In July 2014, Dr. Saito noted that Plaintiff presented as anxious and fearful. AR 659. Dr. Saito prescribed buspirone and Ambien. Id. By March 2015, Dr. Saito's clinic noted that Plaintiff was "not taking" these medications. AR 678.

In March 2015, the workers' compensation claims adjustor denied a requested referral for a psychiatric consultation. AR 1018.

In November 2015, an agency psychologist reviewed Plaintiff's records and found "insufficient evidence to substantiate the existence of a [mental] disorder." AR 112.

Based on this psychological evidence, the ALJ concluded that Plaintiff had no limitations in the areas of daily living, social functioning, or maintaining concentration, persistence, or pace. AR 39-40. The ALJ therefore found Plaintiff's anxiety and depression non-severe. Id.

### 3. Effect of New Evidence.

Even considering Dr. Godwin's 2016 re-evaluation, the ALJ's determination that Plaintiff does not suffer from a severe mental impairment is still supported by substantial evidence.

In August 2016, Plaintiff told Dr. Godwin that he was anxious and frustrated because he was awaiting authorization for a consultation with a hand specialist regarding his trigger finger. AR 1428. He was worried about his health, his finances, and his future. AR 1429. Plaintiff had run out of his Xanax prescription from early 2016 and "cannot get a refill." Id. He reported that Xanax effectively diminished his anxiety but caused him to become "too sleepy." Id.

Dr. Godwin observed no "obvious signs of depression" and found Plaintiff "more anxious than depressed." AR 1427. Dr. Goodwin opined that Plaintiff

could function "in the average range intellectually" with no obvious memory deficits. Id. Plaintiff displayed sound judgment and "no difficulty making routine decisions." AR 1428. Dr. Godwin noted that Plaintiff tried to combat his anxiety by staying busy. AR 1430. "Just recently [Plaintiff] had been volunteering at the Peach Tree Theatre Company where he taught actors for a Shakespeare play. Rehearsals lasted 4 hours a day for 6 weeks, until the production was put on a couple of weeks ago." Id.

While Dr. Godwin affirmed his 2015 diagnosis of adjustment disorder with anxiety, he opined that Plaintiff's adjustment disorder had "worsened" such that he would "now benefit from psychotherapy." AR 1432. Dr. Godwin opined that Plaintiff's psychological symptoms were still not sufficiently intense to render him disabled on a psychological basis alone. AR 1433. Dr. Godwin declined to apportion any portion of Plaintiff's disability to his psychological condition because Plaintiff was not yet at maximum medical improvement. AR 1434.

This report has no tendency to show that Plaintiff's adjustment disorder more than minimally affected his ability to work. As Dr. Godwin noted, despite his psychological symptoms, Plaintiff could volunteer many hours with a theater company, displayed no cognitive deficits, and reported healthy social relationships.

Per Plaintiff, if "the ALJ would have incorporated mental limitations into the [RFC], it is likely that [Plaintiff] would have had concentration deficits or a limitation to simple, repetitive tasks, that would have eliminated his past relevant work, or the skilled job identified by the VE." JS at 16. Given Plaintiff's reported activities (e.g., writing, acting, teaching, volunteering, and managing his own affairs), there is no evidence that Plaintiff suffers from concentration deficits and can only do simple, repetitive jobs.

**E.** **Issue Three C: The ALJ's RFC Determination.**

Plaintiff asserts the ALJ erred in evaluating the medical evidence and should have included the following limitations in Plaintiff's RFC:

• A limitation against walking on uneven terrain (JS at 15);

• Three limitations imposed by Dr. Grossman: no (1) "lifting, pushing, or pulling greater than 30 pounds," (2) "standing longer than 30 minutes at a time," and (3) "repetitive stooping, squatting, kneeling, or climbing" (id.);

• A limitation against all overhead reaching (id. at 17); and

• A limitation to occasional handling and fingering, rather than frequent (id.).

### 1.    Uneven Terrain.

Dr. Afra opined that Plaintiff should be limited to "occasionally" climbing ladders and walking on uneven terrain. AR 1063. In the social security context, "occasional" means up to one-third of the time. SSR 83-10, 1983 WL 31251, at *5. The ALJ precluded Plaintiff from climbing ladders, but was silent as to Plaintiff's ability to walk on uneven terrain. AR 41.

Plaintiff argues that while the ALJ gave the opinion of consultative examiner Dr. Afra great weight, he failed either to (1) incorporate Dr. Afra's limitation against walking on uneven terrain into Plaintiff's RFC or (2) give a specific, legitimate reason for rejecting it. JS at 15.

In fact, the ALJ noted that Plaintiff "can ambulate well." AR 41. The ALJ further noted that Plaintiff reported he "walk[ed] on hiking trails for an hour at a time." AR 45. This would be sufficient reason for the ALJ not to include in Plaintiff's RFC a limitation on walking on uneven terrain.

Moreover, any error would be harmless. "A decision of the ALJ will not be reversed for errors that are harmless." Burch, 400 F.3d at 679. Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006). Plaintiff does not assert that any of his past jobs required more than "occasionally" walking on uneven terrain. Thus, even if the ALJ had included that limitation in

the RFC, there is no evidence it would have changed the ALJ's determination that Plaintiff was not disabled.

### 2. Dr. Grossman's Limitations.

#### a. Summary of Dr. Grossman's Opinions.

In November 2013, Plaintiff's treating surgeon, Dr. Grossman, opined that Plaintiff could return to work, so long as he did not lift more than 10 pounds or engage in "repetitive bending, stooping, squatting, kneeling or climbing." AR 591.

The ALJ cited a progress report by Dr. Grossman, dated December 30, 2013. AR 45, citing AR 592-95. In that report, Dr. Grossman explained that Plaintiff continued to recover from his August 2013 spinal surgery but was still awaiting authorization for a cervical MRI to address his neck pain and a consultation with a specialist about his trigger finger. Id. Dr. Grossman opined that it was "unlikely" Plaintiff would ever be able to perform work that requires "heavy lifting or repetitive bending." AR 594. He noted that Plaintiff's condition was not yet permanent and stationary, and that in the meantime, Plaintiff was "precluded from lifting, pushing or pulling greater than 10 pounds, standing longer than 30 minutes at a time, repetitive bending, stooping, squatting, kneeling or climbing." AR 595.

By March 2014, Dr. Grossman concluded that Plaintiff's lumbar spine had reached maximum medical improvement. AR 45, citing AR 1332 (only 1 page of report), AR 844-46 (entire report). In that report, Dr. Grossman opined that Plaintiff could lift and carry up to ten pounds. AR 844. He opined Plaintiff could "stand or walk" less than six hours and sit less than eight hours. AR 845. He limited Plaintiff to pushing or pulling no more than ten pounds. Id. He limited Plaintiff to "occasionally" climbing, balancing, stooping, kneeling, crouching, crawling, and twisting. Id. He opined Plaintiff could engage "frequently" in reaching, handling, and fingering. Id.

In July 2014, Dr. Grossman opined that Plaintiff's work capacity restrictions were "unchanged from that described in [his] March 12, 2014 report." AR 852.

In December 2014, Dr. Grossman noted that Plaintiff had "longstanding" restrictions due to his lumbar spine (apparently referring to those noted in March 2014). AR 1325. Dr. Grossman then added new restrictions due to Plaintiff's cervical spine; he opined that Plaintiff was precluded from "strong gripping or grasping, lifting or carrying bilaterally greater than 10 pounds, forceful pushing or pulling, work at or above shoulder level as well as repetitive or extreme neck motions." AR 1325. Dr. Grossman repeated these restrictions in November 2015. AR 1303.

Dr. Grossman performed Plaintiff's cervical spinal fusion surgery in January 2016. AR 1130. In his last July 2016 progress report, Dr. Grossman opined that Plaintiff was still disabled and not yet permanent and stationary. AR 1276-77.

Plaintiff cites AR 1249 as the source of Dr. Grossman's opinion that Plaintiff cannot push or pull greater than 30 pounds or stand for longer than 30 minutes. JS at 15. That record, however, is a page from Dr. Scharf's report summarizing prior treating records from Dr. Grossman. AR 1231, 1249. Dr. Scharf cited a January 21, 2014 progress report saying that Dr. Grossman last saw Plaintiff on December 30, 2013. AR 1249. Plaintiff has not provided a record cite for Dr. Grossman's actual progress report(s). The Court assumes that Dr. Scharf was referring to the December 30, 2013 progress note summarized above (AR 592-95).

The ALJ gave Dr. Grossman's reports "great probative weight because he was the claimant's treating surgeon and his conclusions were medically supported." AR 44. The ALJ found, however, that "[t]o the extent Dr. Grossman assessed additional functional limitations than found [by the ALJ], those limitations were rejected such as an inability to lift more than 10 pounds, because no other physician imposed such severe restrictions and the clinical findings did not support the limitation." Id.

/ / /

22

b.      Standing.

While Dr. Grossman's December 2013 report restricted Plaintiff from standing longer than thirty minutes as he was recovering from August 2013 surgery, Dr. Grossman dropped that restriction when Plaintiff's condition became stable in March 2014.  Compare AR 595 and AR 845.  Plaintiff fails to cite any medical evidence that an impairment lasting twelve months or more precluded Plaintiff from standing longer than thirty minutes during the period of claimed disability.  Plaintiff, therefore, fails to show the ALJ erred by not including this restriction in Plaintiff's RFC.

c.      Lifting.

The ALJ rejected Dr. Grossman's March 2014 opinion that Plaintiff could lift no more than ten pounds because "no other physician imposed such severe restrictions and the clinical findings did not support the limitation."  AR 44.  The opinions of those other physicians are as follows:

Chiropractor Dr. Clemens (who had established a treating relationship with Plaintiff in 1999 after a non-industrial accident [AR 474]) opined in June 2012 that he expected Plaintiff to be able to return to work in September 2012.  AR 475-76.

Dr. Campwala first saw Plaintiff about two weeks after his accident and opined in August 2012 that Plaintiff could lift up to thirty pounds.  AR 434, 708.

After his lumbar surgery in August 2013, Plaintiff attended physical therapy. His physical therapist, Anna Kotula, discharged Plaintiff on November 18, 2013, because he had "achieved all of his PT goals" except jogging.  AR 508.

In July 2014, orthopedic surgeon Dr. Fields evaluated Plaintiff as part of Plaintiff's workers' compensation claim.  AR 1025.  At that time, Plaintiff was taking Naprosyn/Aleve for his pain, but Dr. Fields noted no prescriptions.  AR 1029.  Dr. Fields opined that Plaintiff's lumbar spine had reached maximum medical improvement, but there were insufficient imaging studies to evaluate Plaintiff's neck pain.  AR 1041-42.  Dr. Fields did a supplemental report in

September 2014, but he did not adjust his opinions. AR 1156.

In September 2015, Dr. Scharf also examined Plaintiff as part of Plaintiff's workers' compensation claim. AR 1085. Dr. Scharf found that the injuries to Plaintiff's neck were related to his industrial accident. AR 1125.

In October 2015, consultative examiner Dr. Afra conducted a physical exam. AR 1057-63. She opined that Plaintiff was capable of light work. AR 1062.

Later in October 2015, agency physician Dr. Ligon reviewed Plaintiff's medical records and concurred that Plaintiff could do light work. AR 113-14. In December 2015, agency physician Dr. Linder also found Plaintiff could perform the exertional demands of light work. AR 151-52.

Thus, at least four other doctors (Drs. Campwala, Afra, Ligon, and Linder) found that Plaintiff could lift weights consistent with light work. The ALJ, therefore, did not err in rejecting Dr. Grossman's contrary opinion as inconsistent with the majority of the medical evidence.

d.     Pushing and Pulling.

The ALJ's limited Plaintiff to "light" work with "frequent" pushing and pulling. AR 41. The ALJ did not specify a weight limit for Plaintiff's pushing and pulling. The Court interprets the ALJ's silence not as an assertion that Plaintiff can push or pull any weight, however heavy, but instead as applying the same weight limits for frequent lifting and carrying in the definition of light work (i.e., ten pounds) to frequent pushing and pulling. 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Plaintiff fails to cite any medical opinion that Plaintiff cannot push or pull more than thirty pounds. Dr. Grossman precluded Plaintiff from "forceful pushing or pulling," but Plaintiff does not discuss what "forceful" means or why this limitation would be more restrictive than Plaintiff's RFC.

Plaintiff perhaps meant to cite to August 2012 records from Dr. Campwala who concluded that Plaintiff could return to work if it did not involve lifting,

pushing, or pulling more than thirty pounds. AR 434, 714. The ALJ gave Dr. Campwala's opinions "great probative weight" because they were "consistent with the mild objective findings at that time and the overall medical evidence." AR 44.

Plaintiff does not assert that his prior work required frequently pushing or pulling items weighing more than thirty pounds, or even more than ten pounds. Plaintiff has thus failed to show prejudicial legal error.

### e. Postural Activities and Bending.

In his progress report after Plaintiff's condition post-lumbar spine surgery had stabilized, Dr. Grossman limited Plaintiff to "occasionally" climbing, balancing, stooping, kneeling, crouching, crawling, and twisting. AR 845. The ALJ also limited Plaintiff to climbing, stooping, kneeling, crouching or crawling occasionally (i.e., less than one third of the time). AR 41. The RFC does not specifically address squatting or bending.

Plaintiff does not explain how "crouching" is meaningfully different from "squatting" or how "stooping" is meaningfully different from "bending," particularly where Plaintiff contends his difficulty is with "bending over" or "bending down." JS at 17; see also AR 151 (SSA form equating "stooping" with "bending at the waist"). Again, Plaintiff has failed to show legal error.

### 3. Handling, Fingering, and Overhead Reaching.

In March 2014, Dr. Grossman opined that Plaintiff could engage "frequently" in reaching, handling, and fingering. AR 845. Later, but prior to Plaintiff's cervical spinal fusion surgery, he opined that Plaintiff was precluded from work "at or above shoulder level," but he did not further restrict Plaintiff's handling or fingering. AR 1325.

Consistent with Dr. Grossman's opinion, the ALJ limited Plaintiff to "frequent" handling, fingering, and overhead reaching. AR 41-42. Plaintiff argues that he is only capable of "occasional reaching, handling, and fingering" and no overhead reaching. JS at 17. Plaintiff, however, does not cite any medical opinion

that he cannot engage in at least "frequent" handling and fingering.

Regarding overhead reaching, Dr. Grossman's December 2014 report does preclude reaching at or above shoulder level due to neck pain, but Plaintiff subsequently underwent cervical spinal fusion surgery in January 2016. AR 1130, 1325. In July 2016, Dr. Grossman did not specify any work limitations attributable to Plaintiff's cervical condition, because Plaintiff's recovery from surgery was ongoing. AR 1276-77.

Plaintiff cites AR 434 to support his contention that he cannot reach overhead. JS at 17. This is an August 2012 treating record from Dr. Campwala stating, "The patient is being seen for a routine clinic follow-up of lumbar strain. … Current treatment includes physical therapy …. PT recommends 12 additional sessions. Pt doing much better but unable to reach overhead and bend down." AR 434. In that same report, however, Dr. Campwala opined that Plaintiff should return to work with the only restrictions being "no heavy lifting greater than 30 pounds" and "no pushing or pulling greater than 30 pounds." Id. Of course, this record from just months after Plaintiff's accident does not reflect his improvement after surgery and physical therapy. Physical therapy records from August 2013 indicate Plaintiff could bend forward and reach his mid-shin. AR 585. His shoulder and elbow movements scored either 4 or 5 out of 5, including shoulder flexion (i.e., overhead reaching). AR 586. By November 2013, his right shoulder flexion score was 5-/5 and his left was 4+/5. AR 513. In 2015, based on Plaintiff's medical records, Drs. Linder and Ligon both found that Plaintiff's overhead reaching ability was limited, but that Plaintiff could still perform overhead reaching "frequently." AR 152, 170.

There are no post-cervical spine surgery medical opinions concerning Plaintiff's reaching abilities. Plaintiff argues that the ALJ's recognition that Plaintiff cannot turn his head side to side is inconsistent with finding Plaintiff capable of frequent reaching, because "reaching might well involve the frequent

turning of the neck to reach an item, depending on where the item is located and how often the item is needed." JS at 5. Reaching, however, does not necessarily require turning one's head from side to side. Plaintiff failed to show error.

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED.

Dated: November 15, 2017

*Karen E. Scott*

KAREN E. SCOTT
United States Magistrate Judge